IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:

ENTSORGA WEST VIRGINIA, LLC,          Bankruptcy Case No. 23-00046
      Debtor-in-Possession.                   Chapter 11

**INITIAL OBJECTION OF U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE TO THE EXPEDITED MOTION OF DEBTOR-IN-POSSESSION FOR ORDER AUTHORIZING POST-PETITION FINANCING TO 11 U.S.C. §§ 105(A), 361, 362, 363, 364(C)(1), 364(C)(2), 364(C)(3), 364(D)(1) AND 364(E) AND (II) SCHEDULING A FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(B) AND 4001 (C)**

**COMES NOW**, U.S. Bank Trust Company, National Association, as Indenture Trustee (the "Trustee") and hereby files this Objection (the "Objection") to the Expedited Motion of Debtor-in-Possession for Order Authorizing Post-Petition Financing to 11 U.S.C. §§ 105(a), 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (ii) Scheduling a Final Hearing Pursuant to Bankruptcy Rules 4001(b) and 4001(c) (the "Motion"). In support of its Objection, the Trustee states as follows:

**INTRODUCTION**

1.     The Debtor, which is not operating and has no source of income, is proposing highly unfavorable, insider debtor-in-possession financing that will further burden this estate with debt that it cannot pay. Moreover, the proposed financing would provide a springboard for an insider unsecured creditor, Apple Valley Waste Services, Inc. ("Apple Valley") to become a DIP lender in control of this bankruptcy case and the sale process.

2.     The Motion should be denied because the Debtor seeks to prime the liens of the Trustee without any offer of adequate protection. Further, the Debtor requests an onerous roll up of $1.777 million in prepetition unsecured debt– which is currently not accruing allowable post-petition interest - in exchange for new money of only $156,616, with the entire amount

1

accruing interest at 8% going forward. Further, the proposed DIP facility impermissibly skews the playing field in favor of Apple Valley in the context of an auction of the Debtor's assets by providing Apple Valley with credit bid rights for the entire amount. As set forth in more detail herein, the Motion should be denied.

## BACKGROUND

### I. The Bond Indebtedness

3. The Trustee[1] serves as indenture trustee under that Indenture of Trust dated as of March 1, 2016, and amended and restated as of November 1, 2018 (the "Indenture"), under which West Virginia Economic Development Authority (the "Issuer") issued those $25,000,000 West Virginia Economic Development Authority Solid Waste Disposal Revenue Bonds (AMT) (Entsorga West Virginia LLC Project) Series 2016 (the "2016 Bonds") and those $8,000,000 West Virginia Economic Development Authority Super Senior Solid Waste Disposal Revenue Bonds (AMT) (Entsorga West Virginia LLC Project) Series 2018 (the "2018 Bonds;" and collectively with the 2016 Bonds, the "Bonds").

4. The proceeds of the Bonds were loaned by the Issuer to the Debtor under that Loan Agreement dated as of March 1, 2016, and amended and restated as of November 1, 2018 (the "Loan Agreement").

5. As security for the Bonds, the Debtor entered into that certain Amended and Restated Credit Line Leasehold Deed of Trust, Security Agreement, Assignment of Rents and Leases, and Fixture Filing dated as of March 9, 2016 and amended and restated as of November 30, 2018 (the "Deed of Trust"), pursuant to which the Debtor pledged, *inter alia*, its interest in its leasehold property and related assets to the Trustee.

---

[1] The Trustee is the successor in interest to U.S. Bank National Association, in its capacity as Trustee under the Indenture.

2

6. As further security for the Bonds, the Debtor entered into that certain Pledge and Security Agreement dated as of March 1, 2016, and amended and restated as of November 1, 2018 pursuant to which the Debtor pledged, *inter alia*, its interest in its leasehold property and related assets to the Trustee.

7. Upon information and belief, the principal or principals of Apple Valley also own or control the Debtor.

**II.  The Debtor's Bankruptcy Filing**

8. On February 6, 2023 (the "Filing Date"), the Debtor filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Code").

9. The Debtor is operating its business and managing its financial affairs as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Code.

10. On February 6, 2023, the Debtor filed the Motion. The Motion is set for an interim hearing on February 9, 2023.

11. The Trustee was not consulted about the Debtor's bankruptcy filing and had no opportunity to review the terms of the Debtor's proposed DIP financing.

**GROUNDS FOR INITIAL OBJECTION TO THE MOTION**

**I.  The DIP Facility Cannot Be Approved Because It Is An Inequitable Insider Transaction.**

12. The proposed financing should be denied as it is unfavorable to the estate and because it is an insider transaction. *See In re Harford Sands Inc.*, 372 F.3d 637, 641 (4th Cir. 2004) ("An insider's dealings with a bankrupt corporation are ordinarily subject to 'rigorous' or 'strict' scrutiny."); *In re Lafayette Hotel P'ship*, 227 B.R. 445, 454 (S.D.N.Y. 1998) ("[S]ince there is an incentive and opportunity to take advantage. . . insiders' loans in a

3

bankruptcy must be subject to rigorous scrutiny."), *aff'd*, 198 F.3d 234 (2d Cir. 1999); *In re Papercraft Corp.*, 211 B.R. 813, 823 (W.D. Pa. 1997) ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein.") (*citing Pepper v. Litton*, 308 U.S. 295, 306 (1939), aff'd, 160 F.3d 982 (3d Cir. 1998)).

13. The transaction was not proposed in good faith, and neither the Debtor nor Apple Valley have made any showing on this issue. This is particularly troublesome given the Debtor's failure to disclose the insider nature of the proposed financing.

**II.     The Debtor Cannot Prime the Trustee's Liens on a Nonconsensual Basis.**

14. The Debtor cannot carry its burden in connection with the proposed priming aspects of the financing. The Trustee does not consent to the priming of the liens securing the Prepetition Secured Debt, and, more importantly, there is postpetition financing available on a non-priming basis. See 11 U.S.C § 364(d)(1) ("The court, after notice and a hearing, may authorize the obtaining of credit or incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—(A) the [debtor-in-possession] is unable to obtain such credit otherwise.") (emphasis added). The Debtors cannot show that the Trustee has the benefit of an "equity cushion." The obligations outstanding under the Bonds far exceed the value of the Debtor's property.[2] Accordingly, there is no equity cushion for the Indenture Trustee, let alone an equity cushion sufficient to adequately protect the Indenture Trustee's interests in the Debtor's property.

---

[2] Indeed, in its Schedules [Docket No. 1], the Debtor acknowledges this by listing a total property value of $7,337,352.87 against the outstanding Bond debt of $33,000,000.00.

4

15. Because the Trustee is an undersecured prepetition lender who holds a blanket lien on a debtor's assets, it cannot be adequately protected for the diminution in value of its collateral caused by the priming loan because the debtor has no unencumbered assets to pledge as security for such decrease in value during the pendency of the bankruptcy case. *See e.g., In re Swedeland*, 16 F.3d 552, 567 (3d Cir 1994)("[t]he law does not support the proposition that a creditor ... undersecured by many millions of dollars, may be adequately protected when a superpriority lien is created without provision of additional collateral by the debtor.").

16. Further, the Debtor has not made – and cannot make - the appropriate showing to support its request for financing. "[Section] 364(d) contains two requirements that must be met before a priming lien may be approved. First, the debtor must demonstrate it is unable to obtain financing in any other permissible manner. Second, the debtor must demonstrate that the proposed post-petition financing arrangement adequately protects the interests of the property's current lienholder(s) over which a senior or priming lien is proposed to be granted." *Suntrust Bank v. Den-Mark Constr., Inc.*, 406 B.R. 683 (E.D.N.C. 2009), citing *In re Campbell Sod, Inc.*, 378 B.R. 647, 653 (Bankr. D. Kan. 2007) (explaining a principal consideration is "whether the proposed loan and subordination of the existing lender's liens can be made while protecting the existing lender's interests").

17. The Debtor has not satisfied its burden of proof on these elements. Accordingly, the Motion must be denied.

**III.   The Proposed Roll-Up Should Not Be Permitted.**

18. Apple Valley, the proposed DIP lender, allegedly extended $1,777,520.00 in prepetition credit to the Debtor on an unsecured basis. In exchange for only $156,616 in possible new money, the Debtor is seeking to roll-up the entire $1.9 million in prepetition debt,

5

thereby leapfrogging the Trustee, any other secured creditors, and similarly situated unsecured creditors on the entire amount of its claim. The Debtor cites no authority for this proposition, and while roll-ups of limited amounts of prepetition <u>secured</u> debt are not uncommon, the Debtor cites no authority or precedent for a roll-up of unsecured prepetition debt, particularly where the transaction benefits an insider. The proposed roll-up violates the absolute priority rule and must not be approved.

19. Moreover, the Debtor proposes to pay 8% interest on the entire amount of the debt, which would result in an interest charge of $154,730.88 per year for a Debtor that has little or no cash and is not operating. This is particularly egregious given that the prepetition debt presently is not accruing interest that is allowable in this bankruptcy case.

**IV.  The Proposed Financing Provides Apple Valley With An Unfair Advantage In Bidding.**

20. Additionally, the Motion makes clear that Apple Valley will "have the ability to make a credit bid in the amount of the DIP Financing." In exchange for only $156,616 in new money, Apple Valley would have the right to credit bid its presently valueless $1,777,520 unsecured claim. This may chill bidding from other buyers as they will not be on the same playing field as Apple Valley. Given the small value that Apple Valley is providing, it should not be permitted credit bid rights for the entire $1.9 million facility, particularly when it is an insider.

21. Because the proposed financing would chill the bidding for the Debtor's assets, it should not be approved.

22. The Trustee reserves the right to raise additional grounds for this Objection at or prior to the hearing on the Motion.

**WHEREFORE,** the Trustee requests that the Court:

a) deny the Motion; and

b) provide such other relief as is just and proper.

Dated:  February 8, 2023          **U.S. BANK TRUST COMPANY, NATIONAL ASSOCIATION, AS INDENTURED TRUSTEE**

/s/ *Arthur M. Standish*
Arthur M. Standish (WV #3557)
Steptoe & Johnson PLLC
P. O. Box 1588
Charleston, WV 25326
Phone:  304-353-8135
Facsimile: 304-353-8180
Art.Standish@steptoe-johnson.com
*Local Counsel for U. S. Bank Trust Company, National Association, as Indenture Trustee*


John D. Elrod (Ga. Bar No. 246604)
GREENBERG TRAURIG, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
Telephone: 678-553-2259
Facsimile:  678-553-2269
Email: elrodj@gtlaw.com

*Pro Hac Vice* Forthcoming

*Counsel for U.S. Bank Trust Company, National Association, as Indenture Trustee*

7

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2023, I served or caused to be served a copy of the foregoing document by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of West Virginia, upon those parties registered to receive such electronic notifications in this case.

                                                */s/ Arthur M. Standish*
                                                Arthur M. Standish